IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1996 SESSION

FILED

June 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02-C-01-9604-CC-00117 |
| Appellee, | ) | |
| | ) | Fayette County |
| v. | ) | |
| | ) | Jon Kerry Blackwood, Judge |
| ROY DON GIBSON, | ) | |
| | ) | (Rape of a Child) |
| Appellant. | ) | |

FOR THE APPELLANT:

J. Thomas Caldwell
Attorney at Law
114 Jefferson Street
Ripley, TN 38063

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Deborah A. Tullis
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Elizabeth T. Rice
District Attorney General
302 Market Street
Somerville, TN 38068

Christopher S. Marshburn
Assistant District Attorney General
302 Market Street
Somerville, TN 38068

James W. Freeland, Jr.
Assistant District Attorney General
302 Market Street
Somerville, TN 38068

OPINION FILED: _____

CONVICTIONS AFFIRMED, REMANDED FOR RESENTENCING

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Roy Don Gibson (defendant), was convicted of four counts of rape of a child, a Class A felony, by a jury of his peers. The trial court, finding the defendant was a standard offender, imposed a Range I sentence consisting of confinement for twenty-one (21) years in the Department of Correction for each offense. He was also fined $25,000 for one conviction involving penile penetration. The trial court ordered that the sentences are to be served concurrently. The judge's sentencing order stated Gibson will serve 30 percent of his term before he is eligible for release classification.

Gibson presents six issues for review. Gibson contends the evidence is insufficient, as a matter of law, to support the convictions for rape of a child. He also contends the court erred by (a) failing to require the state to file a bill of particulars; (b) failing to compel a physical and psychiatric examination of the victim; (c) failing to allow him to review Department of Human Services records pertaining to the victim; (d) allowing into evidence and playing for the jury two audio tapes containing incriminating conversations between the defendant and his ex-wife; and (e) allowing the child-victim to testify while holding a teddy bear.

The state also raises an issue on appeal. The state contends the court erred when it ordered that Gibson would be eligible for release after serving 30 percent of his 21-year sentence. Gibson was convicted of four counts of child rape, a statute which went into effect July 1, 1992. Prior to the enactment of the new statute, the same offense was prohibited under the aggravated rape statute. Under the child rape statute a defendant serves 100 percent of his sentence. From the evidence presented at trial, only one of his four convictions could have occurred prior to the effective date of the child rape statute. The record establishes three offenses occurred after the effective date. The state agrees the defendant was properly sentenced at 30 percent for one count. However, for the remaining three convictions, Gibson should be required to serve 100 percent of his sentence.

This Court remands the case for resentencing; otherwise, the judgment is affirmed.

The defendant was a teacher and coach. His work history was sporadic. His tenure at a school usually lasted only a year or two and he moved on. He also worked non-teaching jobs in between the school year. The defendant first befriended Brenda Wilbanks in 1988 while the two were working at a truck stop in West Memphis, Arkansas. The relationship progressed and eventually Brenda Wilbanks and her two young daughters, Elizabeth Wilbanks and D.W.[1] moved in with the defendant and lived together as a family. The defendant returned to coaching and teaching in 1989 and took a job at a school in Tipton County. The defendant and Brenda Wilbanks were married in July 1990. The next year in August 1991, the defendant took a job teaching and coaching at Rossville Academy and the group moved to a double-wide trailer in Fayette County. The couple's relationship was tumultuous at best. A daughter was born of his union on November 19, 1992. In October 1993 the two were divorced. They reunited in March 1994 and Brenda Gibson's two girls went to live with their biological father. The defendant and Brenda Gibson lived together with their daughter until June 7, 1994. The investigation into the allegations of sexual abuse began a short-time thereafter.

## SUFFICIENCY OF THE EVIDENCE

Gibson contends the state failed to prove that the child victim was penetrated vaginally by the defendant (Count 2), she engaged in fellatio with the defendant (Count 3) and she was digitally penetrated by the defendant (Counts 6 and 7).

### A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v.

---

[1]It is the policy of this Court not to identify the minor victims of sexual abuse.

Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App.), per. app. denied (Tenn. 1988).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), per. app. denied (Tenn. 1987). In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Supreme Court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence, Grace, 493 S.W.2d at 476, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are sufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Matthews, 805 S.W.2d at 780.

**B.**

The indictment originally charged the defendant with aggravated rape pursuant to Tenn. Code Ann. § 39-13-502. The original indictment is not included in the record. A superseding indictment was returned charging child rape pursuant to Tenn. Code Ann. § 39-13-522. The state was permitted to amend the new indictment before the trial

4

commenced.  The amendment related to the time the offense occurred.

D.W. provided no date as to when the incident for Count 2 occurred other than it occurred while the family was living in a double-wide trailer in Fayette County.  The record establishes the offenses occurred after the family moved into the trailer in August 1991.  Therefore, the event could have occurred prior to the July 1, 1992 effective date of the child rape law.

**(1)**

The defendant argues "the proof wholly failed to show an offense committed while the Child Rape Statute was the Law of the Laws."

Aggravated rape, the initial offense charged, is "unlawful sexual penetration by the defendant or the defendant by a victim accompanied by any of the following circumstances:" . . . . (4) The victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-502.  Aggravated rape is a class A felony.  The offense of rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than (13) years of age." Tenn. Code Ann. § 39-13-522.  Rape of a child is a class A felony.

Sexual penetration means "sexual intercourse . . . however slight." Tenn. Code Ann. § 39-13-501(7).

The only difference between the two crimes is the nature of the sentence imposed.  Under the child rape statute, offenders are required to serve every day of their sentence.  Under aggravated rape, offenders can qualify to serve a percentage of the sentence.

Sexual penetration with a child under the age of thirteen was prohibited by law during the entire time in question.  The defendant's argument as to this subissue is without merit.

**(2)**

Gibson also argues that he cannot be convicted of raping a child because the state failed to prove penile penetration in Count 2.  He argues there was no evidence of injury

5

or penetration; and D.W. did not complain that she was penetrated.

The child-victim testified that while she, her sister, and mother were living in a double-wide trailer the defendant raped her. D.W. testified the act occurred in "Roy's room." She and the defendant were the only ones home at the time. The girl testified: "He put his hand on my private and then he put his private on mine, and it went in a little bit, and white stuff came out and it got on me, and I wiped it off." During the act the defendant asked her to say, "F--- m-." She refused. "Roy told me if I told anybody that they would be mad at me."

The defendant met with his ex-wife, Brenda Gibson, on two occasions. She, along with a Tennessee Bureau of Investigation agent, secretly recorded these conversations. The tapes were played for the jury. During the conversations, Gibson admitted touching his penis to the child's genitals. The first tape recording was made July 10, 1994 at Pancho's in West Memphis, Arkansas:

| | |
|---|---|
| Roy Gibson: | I didn't touch her [that much]. It was just her hand touching me down there. That's about the main thing. That's all it was. Very few times did my thing touch her. Very few times. |
| Brenda Gibson: | What did you just say? |
| Roy Gibson: | You know what I said. My dick did not touch her down there but maybe ten times in how many years - three or four years - that's all -- just touched her -- that's all.... |

* * * *

| | |
|---|---|
| Roy Gibson: | I didn't touch her more than 10 times with that down there. The whole time. . . . |
| Brenda Gibson: | With what? |
| Roy Gibson: | Dick, Brenda, dick, dick. (Unintelligible). She didn't like that Brenda. Did she tell you that? |
| Brenda Gibson: | Yes, she told me she didn't like it. |
| Roy Gibson: | It was very seldom. |
| Brenda Gibson: | She also told me it hurt her. |
| Roy Gibson: | Once or twice. It wouldn't fit in her, though I can guarantee you that. There's no way. She was little then. |

* * * *

| | |
|---|---|
| Brenda Gibson: | What you are telling me is you touched your penis to her vagina. |
| Roy Gibson: | Just touched it. Just touched it. It never went in. It couldn't go in. My finger couldn't even go in. |

| | |
|---|---|
| Brenda Gibson: | But you attempted, you tried. |
| Roy Gibson: | I did not try. It would hurt her Brenda. I have a lot more sense than that. It would hurt her. My God it would hurt you. No, I did not do that. No, I did not try to do that. I just touched, is that enough? It was mostly jacking off, that's all. (Unintelligible). |

He also confirmed he told the victim if she told anyone what was occurring, "we'd all get in trouble."  He also confirmed he asked her to say "F–- m-" when he was committing the act.

In a second conversation recorded July 18, 1994 at Mazzio's Pizza in Memphis, the defendant again admitted to the act:

| | |
|---|---|
| Roy Gibson: | I never went inside her, with my finger or anything, and I'll take a test to that. |
| Brenda Gibson: | Roy, that's not what you told me last time. |
| Roy Gibson: | No it's not. I never did. I can't, I'm too fuckin' big, how could I do that? |
| Brenda Gibson: | You attempted to Roy. |
| Roy Gibson: | I touched her, you know that thing's kinda big, it probably felt bad to her. I'm sorry, if she said it hurt, I did not get near her. |
| Brenda Gibson: | Roy, how can you say you didn't get near her when you just said . . . |
| Roy Gibson: | After she said it hurt, Brenda, I got away from her. Any time. |

* * * *

| | |
|---|---|
| Roy Gibson: | I did not try to rape her, how could anybody say that? That's a damn lie. I touched her with it, and that's all I did. She was too little, she's a baby, I can't do it, there's no way I could do it. You ought to know that. Any time she said anything hurt I stopped. Any time. |

Dr. Alan Battle, a clinical psychologist who briefly treated the defendant, said the defendant reported about 20 instances of sexual contact with the victim over a three to four year period. The defendant told the doctor no penile penetration had occurred.

Jo Jones, a nurse evaluator from Memphis Sexual Assault Center, testified that although the results of the victim's exam were normal and her hymen was intact, a penis could have been inserted between the victim's labia and not break the hymen.    Sexual penetration is sexual intercourse "however slight."  The victim who was born June 9, 1983, would have been less than 13 years of age when the act occurred.

7

Thus, the issue is without merit.

# C.

The defendant next contends the evidence was insufficient to support the conviction for rape of child involving fellatio. The amended indictment charges child rape by oral penetration of the victim's mouth by penis between June 1, 1991 and June 1994 (Count 3).

The child-victim testified that while the family was living in the trailer "he made me put [his sexual organ] in my mouth." She stated that Jamie, her half-sister (daughter of Brenda Gibson and the defendant), had been born when this occurred. Jamie Gibson was born in November 1992. The child rape statute would have been in effect.

Dr. Battle testified that the defendant said the 11-year-old would "masturbate his penis until he achieved orgasm, and one or two times, perhaps, she had sucked the penis, but she didn't like it."

In the first recorded conversation between the defendant and his ex-wife, the defendant admitted to committing fellatio:

| | |
|---|---|
| Roy Gibson: | She did it with her mouth a few times, not very many, because she didn't like to do that. I never forced her to do it. I never forced her to do anything. |

* * * *

| | |
|---|---|
| Roy Gibson: | She used her mouth sometimes. (Unintelligible) Did she tell you that? |
| Brenda Gibson: | She told me she didn't like any of it. |
| Roy Gibson: | Well that's not -- well you can believe that, and I want to believe it too, but she didn't act like that sometimes. I think she did like some of it at first (unintelligible). |

During the conversation on July 18, 1994:

| | |
|---|---|
| Brenda Gibson: | She tells me you made her have oral sex with you. |
| Roy Gibson: | I didn't have to make her, Brenda. I know you didn't want to understand it, but I didn't have to make her do it. I know you don't want to understand this part, but some things she actually enjoyed because she's young and didn't know |

8

| | |
|---|---|
| | what she was doing. But you don't want to understand that, Brenda, I didn't have to make her do anything. |
| Roy Gibson: | If I asked her to do that and she didn't want to do it, she didn't do it. She was never forced to do it. |
| Brenda Gibson: | To do what? |
| Roy Gibson: | Oral sex, Brenda, oral sex! (Shouting) How many times do you gotta hear the fuckin' shit. . . . . If she did it, it was because she wanted to. It wasn't every time, it wasn't all the time. |
| Brenda Gibson: | Well how many times was it in the truck, can you tell me that? |
| Roy Gibson: | No, I can't tell you that. I didn't take a fuckin' log book in the truck and write it down. |
| Brenda Gibson: | I am sure you didn't Roy, but my Lord. |
| Roy Gibson: | It wasn't very many, the whole thing wasn't that many. I don't think it was 20 times the whole time, the whole year that you're talking about. Hell, like you say, one time's enough. I'm guilty. |

This issue is without merit.

## D.

The defendant next contends the evidence was insufficient to support the conviction of rape of a child by digital penetration. This act was to have occurred between June 1991 and June 1994 (Count 6). In a letter to the defendant's attorney, the state claimed this act occurred June 9 or 10, 1994 at a house in Moscow, Fayette County.[2]

The child-victim identified a photograph of a house in which her family lived in Moscow which is located in Fayette County. Her older sister told jurors the family had lived in the house for a short time in the Summer of 1994. The child-victim knew her sister Jamie, born in November 1992, lived there as well. The child-victim also said the act occurred around the time of her June 9th birthday.

While at this house, she said the defendant came into her room. He put his hands in her pants. "He started moving around, and he said something, but I don't recall what he said." She said he touched her "private" with his hand. She said he touched both the

_____

[2]The trial court required the state to provide more information to the defendant about the specifics of the acts alleged. The state apparently wrote a letter to the defendant's attorney. The letter is not included in the record, but references are made to it in the record.

inside and outside part of her "privates."

During the July 10, 1994 recorded conversation the defendant told his ex-wife that the contact with her daughter was usually just touching. From comments made about his finger, a jury could find that he attempted to penetrate using his finger.

> Roy Gibson: I didn't touch her [that much]. It was just her hand touching me down there. That's about the main thing. That's all it was.
>
> * * * *
>
> My finger couldn't even go in.

Dr. Battle's testimony indicated the defendant admitted to 20 instances of sexual contact with the child.

In his brief, the defendant argues that he testified at trial D.W. was not at his house in June 1994. This is totally unsupported by the evidence. His own testimony indicates the girls were at his house in June although they may not have spent the night.

The defendant testified he reunited with Brenda Gibson in March 1994, after their divorce. They lived together until June 7, 1994. He said the two girls lived at his house for three days in March until they moved to Mississippi with their natural father. He testified he saw the girls in June 1994. "I went down there [to Mississippi] with her [Brenda Gibson] to get them on June, the 1st." "They came back to our house, but they went over to their aunt's and stayed over there." "I don't think they stayed one night. I don't remember them staying one night." He said D.W. went to her aunt's house in Memphis for a birthday party on June 11. During that whole time he said, "I never saw them again when they went over at their aunt's, except when they came back on the night of the 7th."

The child victim testified the act of digital penetration occurred near her birthday on June 9. The child victim clearly identified this act as one occurring at the defendant's house. The evidence offered by the defendant shows he was in contact with the child-victim around the time of her birthday in June 1994. The act could have occurred without the child-victim spending the night.

The defendant also argues the testimony from nurse evaluator Jones indicated there was no penetration because Jones's evaluation showed an intact hymen and no sign of penetration; the exam of D.W. was "normal." The defendant fails to note that Jones also

10

said the finding of "normal" did not mean the touching did not occur because the defendant could have used a finger and just penetrated between the child's labia. Jones testified the last instance of sexual assault was reported as June 10, 1994. She said she would not expect to find evidence of bruising after twenty days had passed. The defendant argues that the trial court held this testimony was insufficient. The record does not support the defendant's assertions.

The defendant further argues this case is analogous to State v. Shelton, 851 S.W.2d 134 (Tenn. 1993), in which the supreme court reversed a sexual battery conviction when the proof was non-specific and the medical evidence was lacking. Shelton is distinguished from this case. The victim in Shelton did not testify[3] as this child-victim did. In Shelton, the only incriminating evidence indicating abuse of the child-victim came from two other child-victims who gave non-specific testimony. This is clearly distinguishable from the present case which includes specific testimony from the child-victim and admissions by the defendant.

"Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required;" Tenn. Code Ann. § 39-13-501(7). A rational trier of fact could have found that digital penetration occurred.

This issue is without merit.

### E.

The defendant next contends the evidence was insufficient to support the conviction of rape of a child by digital penetration. This act was to have occurred between June 1990 and June 1994 (Count 7).

The child victim testified this incident occurred at the trailer. Jamie had been born at that time indicating this act occurred after November 1992. She said everyone was present at the trailer when this occurred. She and her sister were in the room they shared. She told jurors she was sleeping on the floor; her sister was in her bed asleep. The

---

[3]The defendant is most likely referring to victim "C" in Shelton.

defendant entered the room and "put his finger in my private."

The defendant argues the child was under the influence of her mother whom the defendant claims was attempting to extort money from the defendant. The defendant also argues the child was an accomplice and a conviction cannot be upheld on the victim's unsupported testimony.

There is nothing in the record to support the defendant's claims the child was an accomplice except for his own feeble suggestion that she enjoyed performing some of the acts. This issue was not raised during the trial and was not raised in the motion for new trial, therefore, it is waived.

The defendant by his own admission acknowledges touching the girl.

The issue is without merit.

**BILL OF PARTICULARS**

The defendant contends the trial court committed error of prejudicial dimension by failing to require the state to provide the defendant with a bill of particulars. The defendant argues he was prejudiced by the lack of specifics in the indictment. He further argues he was denied access to witnesses in the case who could have provided more information. Finally, he argues he was charged with an offense which took place prior to the enactment of the law he was alleged to have violated.

**(1)**

The defendant asserts that having a bill of particulars would be the only way he could have properly investigated the charges against him. The original indictment charged the defendant with seven counts of aggravated rape occurring between June 1990 and June 1994. An amended indictment charged the defendant with seven counts of child rape occurring between June 1991 and June 1994. The child rape statute went into effect July 1, 1992. Thus, the defendant argues he was alleged to have committed an act before it was made illegal pursuant to the child rape statute.

12

Tennessee Code Annotated § 39-13-502 prohibiting aggravated rape and Tenn. Code Ann. § 39-13-522 prohibiting child rape proscribe the same behavior -- the rape of a victim under the age of 13. Both are Class A felonies. The only difference between the two statutes is the sentences imposed following a conviction. In prosecutions pursuant to the aggravated rape statute, the defendant becomes eligible for release on the release eligibility date. In prosecutions pursuant to the child rape statute, the defendant must serve 100 percent of his sentence.

The defendant was not prejudiced by the fact that the time period indicated in the indictment covered a period before the enactment of the child rape law. The action was still prohibited under the aggravated rape statute which was the original indicted charge. The defendant had adequate notice of the allegation. The state agrees one of the convictions occurred before the effective date of the child rape statute.

**(2)**

The defendant argues he was not allowed to speak with the child victim or Brenda Gibson, the child's mother; nor was he given statements made by these two witnesses.

The defendant filed a motion seeking any statements made by the victim on April 12, 1995 but he did not file a motion seeking access to or interviews with the victim, her sister, or their mother. The record is devoid of any evidence that demonstrates the defendant was denied access to the witnesses. He has not demonstrated how he was prejudiced by lack of access.

Furthermore, the legal custodian for a minor child-victim has an absolute right to refuse a defense attorney's request for an interview. State v. Michael Scott Barone, Davidson County No. 01C01-9008-CR-00196 (Tenn. Crim. App. Nashville, October 2, 1991), rev'd in part on other grounds, 852 S.W.2d 216 (Tenn. 1993); State v. James Dison, Sevier County No. 03-C01-9602-CC-00051 (Tenn. Crim. App., Knoxville, January 31, 1997).

This subissue is without merit.

The defendant filed a motion for bill of particulars on April 12, 1995. The defendant contends the court erred by not requiring the state to file a bill of particulars. The trial court considered the motion on April 26, 1995.

The trial judge decided to reserve ruling on the issue. Instead, he decided to wait and see what material the state provided the defendant in discovery and if he was provided enough information to prepare a defense. The court said in ruling:

> In this discovery that Mr. Caldwell is going to be allowed, if it delineates enough of the particular acts in the charge for him to prepare a defense, then the Court will deny the bill of particulars; but if it doesn't do that, then the Court thinks that a bill of particulars, specifying as best what the State intends to prove on each of these particular elements, should be required.

Defense counsel filed a motion to dismiss the prosecution on May 30, 1995 after the state failed to disclose particulars of the charges as ordered by the trial court. The state apparently sent defense counsel a letter dated June 2, 1995.[4] The state provided more specifics regarding the offenses and stated some of the offenses took place at the defendant's trailer in Fayette County. The defendant argues the letter limited the offenses to June 1991. However, the quoted portion of the letter in the defendant's motion to strike merely indicates the defendant took a teaching job in June 1991 and moved to a trailer at that time. The quoted material does not indicate the offense occurred in June 1991. The indictment provided the time period for the offense was June 1990 and June 1994.

The letter also stated that in March 1994 Brenda Gibson moved in with the defendant in a house in Moscow. The letter stated the defendant fondled the child-victim's vagina with his hands at this house. This occurred, according to the state, at the time of the child's eleventh birthday.

In the defendant's motion to strike, he argued that except for two specific charges all others should be stricken. It should be noted, the defendant failed to make the letter a part of record. He merely relies on his own recitation of certain parts of the state's letter

---

[4]This letter is not included in the record. The defendant agrees he received this letter.

14

for his argument.

During the hearing on the motion for a bill of particulars, the defendant had received two audio tapes containing the defendant's admissions to penile-vaginal penetration, fellatio, and digital penetration of the victim. The defendant also had a two-page report prepared by Dr. Alan Battle, a clinical psychologist, who would testify about the defendant's statements. The report indicated that the defendant had admitted to sexual contact with the child-victim. The defendant also had the indictment which detailed seven allegations of sexual penetration between June 1990 and June 1994.

The well-established law in Tennessee does not require an exact date or year of an offense unless the date "is a material ingredient in the offense." State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991). The state only needs to allege the offense was committed prior to filing of the indictment. Byrd, 820 S.W.2d at 740.

The Constitutions of Tennessee and the United States provide that criminal defendants have a right to know the nature of the crime charged. An indictment must provide notice of the offense to the defendant, provide the court with adequate ground upon which to enter a proper judgment, and provide protection against double jeopardy. Byrd, 820 S.W.2d at 741.

The purpose of the bill of particulars is to provide the accused with sufficient information about the offense alleged in the indictment to permit the accused (a) to prepare a defense to the offense, (b) to avoid prejudicial surprise at trial, and (c) to enable the accused to preserve a plea of double jeopardy. Byrd, 820 S.W.2d at 741; State v. Campbell, 904 S.W.2d 608, 611 (Tenn. Crim. App. 1995); State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993). In State v. Byrd, the supreme court recognized that in most child sex abuse cases the state is unable to offer the specific date when an alleged offense occurred. Byrd, 820 S.W.2d at 741. Nevertheless, a trial court should require the state to furnish what information it may have in its possession concerning the time when the alleged offense was committed. Byrd, 820 S.W.2d at 741; see Campbell, 904 S.W.2d at 611-12. Descriptive information can narrow the time frame of the offense alleged in the indictment. Byrd, 820 S.W.2d at 742. When the state lacks information to narrow the time frame with descriptive references, an accused's conviction

15

may be affirmed if it appears the defense of the accused was not hampered by the lack of specificity of the indictment. Byrd, 820 S.W.2d at 742; State v. Anderson, 748 S.W.2d 201, 204 (Tenn. Crim. App.), per. app. denied (Tenn. 1985).

The record reflects the state gave the defendant the information it had. The taped conversations between the defendant and his ex-wife provided the specifics of many of the acts. In fact, the statements indicated there were more crimes committed than those indicted. The psychologist's report also indicated the defendant acknowledged sexual contact with the child-victim. The only thing the defendant did not have were statements made by the child-victim and her sister. Her sister's testimony helped to provide the time-frame when the family lived in the trailer and then in the Moscow house. This was information the defendant obviously knew. This information was provided to the defendant in the state's letter.

The original indictment limited the offenses to a period between June 1990 and June 1994; the amended indictment limited the offenses to a period between June 1991 and June 1994. This protected the defendant's double jeopardy rights. Given the information furnished, the defendant was provided with notice of the charges; the court was provided with adequate grounds upon which to enter a judgment; and the defendant was protected from being placed in double jeopardy. The state would "obviously be estopped from initiating subsequent prosecutions for any similar offenses against the same victims occurring within the same time period." Byrd, 820 S.W.2d at 741.

Furthermore, the defendant was neither prejudiced nor surprised at trial. His defense was not hampered by the lack of specificity in the indictment.

The defendant took the stand and denied all of the offenses. He attempted to discredit Brenda Gibson by testifying that she had been unfaithful to him; he also claimed to be under her control. He said he was so in love with her, that he would have done anything to keep her. She did not testify, so his testimony went unchallenged.

The defendant claimed Brenda Gibson threatened him a month before she secretly recorded her conversation with him. He testified Gibson told him that if he would admit to sexually molesting one of the girls, she and Jamie, their daughter, would move back in with him. Otherwise, he would not see his daughter again. According to the defendant, she

16

also told him he had to attend counseling with her. He also testified she told him that if he provided her with his Bronco, $5,000 cash, a washer/dryer, some furniture, and $400 a month child support she would not claim that he sexually abused her daughter. He also said his ex-wife aroused him sexually and then stopped. She said until he did what she wanted she would go no further.

Regarding the conversations on the tapes and his admissions, the defendant testified he was too drunk and he did not remember making any of those statements. As for his conversation with Dr. Battle and those admissions, he said he was "too upset" at the meeting and did not remember making those statements. While he did not remember making the statements, he testified he made them because of her threats. Gibson said he would do anything his ex-wife had asked because he wanted her back.

The defendant was able to tell jurors his full story and was not hampered by a lack of a bill of particulars.

This issue is without merit.

## ADMITTANCE OF AUDIO TAPES

The defendant contends the trial court committed error of prejudicial dimension by admitting into evidence two audio tapes containing conversations with his ex-wife.

One tape was recorded on July 10, 1994 at Poncho's Mexican Restaurant in West Memphis, Arkansas. A second tape was recorded July 18, 1994 at Mazzio's Pizza in Memphis. The conversations lasted several hours. Brenda Gibson wore a concealed microphone. Tennessee Bureau of Investigation agents recorded the conversations on audio tape. During the conversation, Brenda Gibson engaged the defendant in conversation about the sexual assaults on her daughter. She asked the defendant for more specific information as to what occurred and when.

The defendant admitted to sexually abusing the young girl. His language was often raw and lewd. He said the victim masturbated him and a "few times" performed oral sex on him. He also admitted to penile penetration of the victim saying "very few times did my [penis] touch her." He estimated it was not more than ten times. He admitted telling the

17

victim if she told anyone about what had been occurring "we'd all get in trouble."

During the July 18 conversation Gibson said, "It wasn't very many. The whole thing wasn't that many. I don't think it was 20 times the whole time, the whole year you are talking about. Hell, like you say one time's enough I'm guilty."

The defendant attempted to suppress the tapes. He argued he was tricked and entrapped into making the incriminating statements, and his statements were not voluntary. He claimed the statements were taken in violation of his constitutional rights against self-incrimination, right to counsel, and due process. The defendant objected to the admissibility of the tapes based upon the authentication of the tapes by Tennessee Bureau Investigation Agent Terrell McLean. He argued what Agent McLean heard was hearsay. On appeal he argues playing the tape containing Brenda Gibson's accusations in the presence of the jury violated his rights to confront the witnesses against him. Brenda Gibson was not called by the state to testify during the trial. Objection is also made to Brenda Gibson's statements regarding what her daughter told her. The defendant also argues Brenda Gibson's statements are hearsay and her statements as to what her daughter said constitute double hearsay.

When the recordings were made the defendant had not been arrested. He was merely a suspect in the sexual abuse of his wife's daughter. Therefore, his rights against self-incrimination, to counsel, and due process were not violated.

This case is analogous to State v. Jones, 598 S.W.2d 209, 222-23 (Tenn. 1980), in which transcripts of taped conversations between a defendant and a non-testifying witness were presented to a jury by the agents who monitored them.[5] Like Gibson, Jones raised the confrontation issue. The Tennessee Supreme Court in Jones said that it was neither a confrontation nor hearsay problem.

Brenda Gibson's statements on the tapes were not hearsay because her statements were not offered for the truth of the matter asserted. Tenn. R. Evid. 801(c); see Jones, 598 S.W.2d at 223. Her statements were not offered or intended to be substantive evidence. The purpose of her comments was to elicit statements from the defendant. As in Jones,

---

[5]The supreme court was critical of this approach: "The disturbing factor in this lawsuit is that the State precipitated this problem by declining to call an available witness and then attempting to piggy-back her testimony into the record through two listeners." Jones, 598 S.W.2d at 223.

the state did not ask the jury to believe what she said on the tapes. The state's primary objective was to bring before the jury the statements made by the defendant. See Jones, 598 S.W.2d at 223.

The issue of confrontation does not apply to the statements made by Brenda Gibson. Likewise, what the court said in Jones is applicable here. "The issue of confrontation does not arise as to her. The mere fact that cross-examining her would have been a defense lawyer's delight, and that this opportunity did not present itself, does not operate to add a constitutional dimension to the situation." Jones, 598 S.W.2d at 223. Even though she did not testify, the defendant attacked her credibility when he testified. Moreover, her conversation added nothing to the case in light of the defendant's own admissions on the audio tapes, those made to his psychologist and in light of the victim's testimony.

The Jones court held tape recordings may be presented by any witness who was present during the recording or any witness who monitored the recording as long as he can identify the declarant with certainty and his testimony comports with the other rules of evidence. 598 S.W.2d at 223. The court continued, "In all such cases the jury should be instructed that only the statements, admissions and declarations of the declarant may be considered in the question of guilt or innocence. Further any statement made by a nontestifying party to the conversation which tends to be prejudicial to the defendant must be redacted, unless admissible under some other rule of law." Jones, 598 S.W.2d at 223. In Jones the court found that full opportunity was given to cross-examine the agent who presented the transcripts to the jury. Jones, 598 S.W.2d at 224.

While it is true Brenda Gibson was a nontestifying party and the record indicates no instruction was given in this case when the tapes were played for the jury,[6] her statements were not prejudicial compared with those made by the defendant.[7]

If the defendant desired a limiting instruction regarding the statements made by

---

[6]The record indicates that no instruction was given when the tapes were played for the jury. The instructions given at the conclusion of the proof were not included in the record.

[7]The Jones court concluded that the confrontation issue did not arise because the full opportunity was given and used to cross-examine the witnesses who testified to the statements made by the defendant.

Brenda Gibson contained on the tapes, he should have moved the trial court to give such an instruction. Tennessee Rules of Evidence 105 places the burden of triggering a request for a limiting instruction upon the party who seeks or is entitled to the instruction. Tennessee Rules of Evidence 105 states: "[T]he court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." The failure to request a limiting instruction results in the waiver of the issue. Tenn. R. App. P. 36(a).

## ACCESS TO DHS RECORDS

The defendant next contends the trial court erred by denying him access to the child's records from the Department of Human Services. He argues the records may have contained exculpatory information and evidence, namely the child made contradictory statements and past claims of sexual abuse.

The record indicates the trial court planned to review the records in camera to determine whether there was exculpatory information contained in the report and whether there was support for the court to order a psychological and physical examination of the child. The record includes no further mention of what the court found as to the contents of the records.

It is the duty of the defendant to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of his appeal. Tenn. R. App. p. 24(b); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Hopper, 695 S.W.2d 530, 537 (Tenn. Crim. App.), per. app. denied (Tenn. 1985); State v. Wallace, 664 S.W.2d 301, 302 (Tenn. Crim. App.), per. app. denied (Tenn. 1983). When the record is incomplete, or does not contain the proceedings relevant to an issue, this Court is precluded from considering this issue. Hopper, 695 S.W.2d at 537; State v. Morton, 639 S.W.2d 666, 668 (Tenn. Crim. App.), per. app. denied (Tenn. 1982); State v. Hoosier, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982). Furthermore, this Court must conclusively presume that the ruling of the trial court was correct in all particulars. State v. Taylor, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983), per. app. denied (Tenn. 1984); State v. Baron, 659 S.W.2d 811, 815 (Tenn. Crim. App.),

20

per. app. denied (Tenn. 1983); State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App.), per. app. denied (Tenn. 1981).

Additionally, Tenn. Code Ann. § 37-1-612 makes all reports of child sexual abuse confidential. Through enumerated exceptions, the statute provides access to the following (a) law enforcement officers investigating child sexual abuse, (b) the district attorney general, (c) grand jurors through power of a subpoena, (d) those engaged in genuine research and audits, (e) probation officers or the like charged with presenting information in judicial or administrative proceedings, and (f) those treating the child.

Those accused of child sexual abuse are not among the exceptions to Tenn. Code Ann. § 37-1-612. Furthermore, Tenn. R. Crim. P. 16(a)(2) prohibits discovery and inspection of reports and other internal documents made by state agents in connection with the investigation and prosecution of the case. Tenn. R. Crim. P. 16(a)(2). See also State v. Clabo, 905 S.W.2d 197, 201 (Tenn. Crim. App.), per. app. denied (Tenn. 1995). As in Clabo, Gibson wanted access to the DHS records to establish inconsistencies in the victim's statements and to gain access to information to impeach the victim.

The defendant is not entitled to the records. The issue is without merit.

**REQUEST FOR EXAMINATION**

The defendant also contends the trial court committed error of prejudicial dimension because the court refused to require the victim to submit to a psychological evaluation and physical examination. This Court is of the opinion the trial court did not abuse its discretion in denying the defendant's motion.

A trial court should not require a sex abuse victim to undergo a psychological examination unless the "most compelling of reasons" are established by the accused. Forbes v. State, 559 S.W.2d 318, 321 (Tenn. 1977); State v. Ballard, 714 S.W.2d 284, 287 (Tenn. Crim. App.), per. app. denied (Tenn. 1986). The phrase "compelling reasons" includes situations "where substantial doubt is cast upon the victim's sanity, or where there is a record of prior mental disorders or sexual fantasies, or where the story is incredible, and even in these situations, only if there is little or no corroboration to support the charge."

21

Consequently, a trial court should exercise its discretion sparingly when ruling upon a motion to require a victim to undergo a psychological examination in a sexual abuse prosecution. Forbes, 559 S.W.2d at 321. In this case, the trial court correctly found that there was no "compelling reason" to require the child victim to undergo a psychological evaluation.

The defendant also filed a motion requiring the child to be examined by a qualified medical doctor. The examination would show, the defendant argues, the child had not sustained any penetration; this evidence would be exculpatory and exonerate the defendant. The analysis for determining whether to compel a physical examination is the same analysis discussed in Forbes for determining whether a psychological examination should be compelled. State v. Barone, 852 S.W.2d 216, 221 (Tenn. 1993). The defendant must show a compelling need for the examination. Barone, 852 S.W.2d at 222. Concerns of traumatizing and embarrassing the victim should be balanced against the likelihood that the exam will provide substantial material evidence for the defendant. In this case an examination was performed at the Memphis Sexual Abuse Center and the results were made available to the defendant. In fact, the defendant called Jo Jones the nurse evaluator to testify. She said her exam revealed no evidence of sexual abuse although she qualified her answer saying that the lack of evidence did not mean that the sexual abuse did not occur. The defendant could have placed his penis or finger in her genital area without disturbing the hymen. She also said she would not expect to find evidence of bruising or touching in that area twenty days after the last reported incident. The defendant failed to establish a compelling reason to order another examination.

Thus, this issue is without merit.

**VICTIM'S TEDDY BEAR**

The defendant also complains the trial court allowed the child to testify while holding a teddy bear. The defendant contends the bear was a prop and it prejudiced the defendant by making the girl look pitiful.

A trial court has broad discretion in controlling the conduct of a trial. Pique v. State,

22

480 S.W.2d 546, 550-51 (Tenn. Crim. App. 1971), cert. denied (Tenn. 1972). The court is responsible for every aspect of the trial. State v. McCray, 614 S.W.2d 90, 93 (Tenn. Crim. App. 1981). Exercise of that discretion will not be disturbed except where an abuse is clearly demonstrated. Cole v. State, 512 S.W.2d 598, 602 (Tenn. Crim. App.), cert. denied (Tenn. 1974). The defendant has failed to demonstrate the trial court abused its discretion by allowing the child witness to hold the bear while testifying.

The issue is without merit.

## SENTENCING

The state appeals Gibson's sentences and claims error in sentences for three counts of child rape (Counts 3, 6, and 7). Gibson did not file a response to this issue.

The trial court found the defendant to be a standard offender and sentenced Gibson to a Range I sentence consisting of confinement for twenty-one (21) years in the Department of Correction for each of the four offenses. The trial court ordered that the sentences are to be served concurrently. The effective sentence is 21 years. The order stated Gibson will serve 30 percent of all the sentences before he is eligible for release classification. It is apparent the trial court sentenced Gibson under the aggravated rape statute for all counts which allows for the possibility of release after serving a portion of the sentence.

The state argues that for three of the four convictions (Counts 3, 6, and 7), the defendant should have been sentenced under the child rape statutes, Tenn. Code Ann. § § 39-13-522 (Supp. 1996) and 39-13-523 (Supp. 1996), which went into effect July 1, 1992. The defendant was indicted under the child rape statute Tenn. Code Ann. § 39-13-522 for all four charges. As the state notes, only the offense in count 2 occurred prior to the effective date of the child rape law July 1, 1992.

Tennessee Code Annotated § 39-13-523(b) provides:

> (b) Notwithstanding any other provision of law to the contrary, a multiple rapist or child rapist, as defined in subsection (a), shall be required to serve the entire sentence imposed by the court undiminished by any sentence reduction credits such person may be eligible to earn. . . .

23

The proof at trial established three of the offenses, Counts 3, 6, and 7, occurred after July 1, 1992. The victim's testimony and the timetable provided by her sister indicated those three offenses occurred after their half-sister, Jamie, was born in November of 1992. This would place the offenses after the effective date of the statute.

For this reason, the defendant should have been sentenced under Tenn. Code Ann. § 39-13-523(b) for Counts 3, 6, and 7. Therefore, this case is remanded to the trial court for resentencing in accordance with this opinion.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
DAVID H. WELLES, JUDGE



_____
JERRY L. SMITH, JUDGE

24