IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 10, 2004

## STATE OF TENNESSEE v. CHRISTOPHER JEROME TAYLOR

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5146     Jon Kerry Blackwood, Judge**

_____

**No. W2002-01977-CCA-R3-CD  - Filed February 25, 2004**

_____

A Fayette County jury convicted the Defendant, Christopher Jerome Taylor, of possession of more than 0.5 grams of cocaine with intent to deliver, possession of more than 0.5 ounces of marijuana with intent to deliver, and felony possession of a handgun.  Following a sentencing hearing, the trial court imposed concurrent sentences of eighteen years for cocaine possession, three years for marijuana possession, and three years for felony possession of a handgun.  On appeal, the Defendant contends: (1) that insufficient evidence exists in the record to support his convictions; and (2) that his sentence is excessive.  Finding no reversible error, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY, and JOHN EVERETT WILLIAMS, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal) and Shana McCoy-Johnson, Somerville, Tennessee (at trial and of counsel on appeal), for the appellant, Christopher Jerome Taylor.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**Opinion**
**I.  Facts**

This case involves a traffic stop by police in Somerville on the night of September 22, 2000, and the subsequent apprehension of the Defendant, Christopher Jerome Taylor, who fled from the car carrying a black bag.  Police recovered the black bag in a nearby cotton field and discovered that the bag contained a loaded 9-millimeter Stallings pistol, a set of postage scales, a bundle of marijuana, a plastic bag of white powder cocaine, and a plastic bag of crack cocaine.  The Fayette County Grand Jury indicted the Defendant for one count of possession of more than 0.5 grams of cocaine with intent to deliver, one count of possession of more than 0.5 ounces of marijuana with

intent to deliver, and one count of felony possession of a handgun. After a trial, a Fayette County jury convicted the Defendant of the charged offenses, and the trial court imposed concurrent sentences of eighteen years for cocaine possession, three years for marijuana possession, and three years for felony possession of a handgun. The Defendant now appeals.

The following evidence was presented at the Defendant's trial. Doug Currey, an officer with the Somerville Police Department, testified that, on September 22, 2000, the Fayette County Sheriff's Department informed the police department that students were having a large party involving alcohol in a field on the east side of Somerville. Officer Currey stated that, in response to this tip, he and Officer Terry Eubanks parked their patrol cars on the east side of Somerville in the median of Highway 64 to monitor traffic at approximately 11:15 p.m. that night. The officer stated that, after about five minutes, he and Officer Eubanks observed a vehicle traveling westbound towards Somerville on Highway 64. Officer Currey testified that he activated his radar and discovered that the vehicle was traveling at forty-eight miles-per-hour in a sixty-five mile-per-hour speed zone. He stated that he immediately suspected that the driver may be intoxicated because of the vehicle's slow speed and the fact that the vehicle was drifting towards the median. The officer checked the vehicle's speed again when it got closer to Somerville and discovered that the vehicle was traveling at forty-one miles-per-hour. Officer Currey stated that the vehicle came within five feet of hitting his patrol car because it drifted inward toward the median. The officer explained that he then looked in the rearview mirror and discovered that the vehicle had no licence plate. Officer Currey stated that he immediately turned his patrol car around and attempted to initiate a traffic stop by turning on his blue emergency lights. He stated that the vehicle was traveling in the inside lane and, when he activated the patrol car's lights, the vehicle started drifting over to the right lane towards the curb. The officer explained that the vehicle slowly drifted to the curb, and, before it came to a complete stop, the back passenger door "fl[ew] open" and a man, whom he identified as the Defendant, ran out of the vehicle toward an adjacent cotton field. Officer Currey stated that he noticed that the Defendant held a large object in his left hand as he ran toward the field.

Officer Currey explained that he immediately contacted the police department and informed them, "I've got one bailing on me." The officer stated that Officer Eubanks, who was behind Officer Currey's patrol car, drove his patrol car to a gas station down the road and turned his head lights towards the cotton field. The officer testified that, after a few minutes, Officer Eubanks and Officer Glenn Burgess brought the Defendant out of the cotton field and put him in the back of Officer Currey's patrol car. Officer Currey stated that Officer Eubanks found $4,636 in cash on the Defendant and placed the money in an evidence bag at the scene. He stated that Officer Euabanks and Officer Burgess found a black bag sitting in the cotton field where the Defendant was apprehended. Officer Currey testified that he opened the black bag and found a loaded 9-millimeter Stallings pistol, a set of postage scales, a large bundle of marijuana, a large plastic bag of white powder cocaine, and a large plastic bag of crack cocaine. The officer stated that he delivered the bags of drugs to the Tennessee Bureau of Investigation ("TBI") for testing, and the TBI confirmed that the substances were marijuana and cocaine. Officer Currey stated that another police officer found a small bundle of marijuana in the back right passenger floorboard of the suspect's vehicle. The officer stated that Officer Eubanks and Officer Burgess also found a green-colored pager and

a pack of Newport cigarettes next to the black bag in the cotton field.

Officer Currey testified that the Defendant was read his Miranda rights after the officers placed him in the back of the patrol car. The officer asked the Defendant whether the drugs found in the black bag and in the vehicle belonged to him, and the Defendant denied that the drugs were his. The officer stated that the Defendant then asked the officers whether they found his pager in the cotton field, and the officers replied affirmatively. Officer Currey testified that he then drove the Defendant to the police department for further questioning. The officer explained that, once at the police department, he and the other police officers again read the Defendant his Miranda rights. The officer stated that, while the police officers were processing the Defendant, he asked if he could have a cigarette. The officer testified that he asked the Defendant, "what kind do you smoke, and he said, 'Newport Shorts.'" Officer Currey stated that Officer Eubanks showed the Defendant the pack of Newport cigarettes he found in the field next to the black bag and asked the Defendant whether the cigarettes belonged to him, but the Defendant responded by asking for a cigarette. The officer explained that the Defendant took the pack of Newport cigarettes found in the field and smoked them. Officer Currey testified that he and Officer Eubanks then started asking the Defendant questions about the drugs and the gun. The officer explained, "He didn't want to say a whole lot at that point, but he did make the statement to us sitting there that he was taking narcotics to somebody here in Somerville."

On cross-examination, Officer Currey testified that, in the arrest report prepared after the Defendant's arrest, he did not state that the Defendant was carrying a large package when he "bailed out" of the car. The State and the Defendant then stipulated that at the time of alleged offense of felony possession of a handgun, the Defendant had been convicted of a felony that would prohibit him from carrying a weapon.

Terry Eubanks, an officer with the Somerville Police Department, confirmed Officer Currey's testimony regarding the traffic stop on the night of September 22, 2000, and identified the Defendant as the man who fled from the vehicle. Officer Eubanks testified that, after the Defendant fled from the back seat of the car into the cotton field, he drove his patrol car to a nearby convenience store and parked the patrol car so that the headlights shined through the cotton field. The officer stated that he then exited his patrol car and began running through the cotton field "to intercept this guy." The officer stated that the Defendant stumbled to the ground so he was able to restrain the Defendant and handcuff him. Officer Eubanks testified that Officer Burgess then arrived in the parking lot of the convenience store, and Officer Burgess took custody of the Defendant. Officer Eubanks stated that he read the Defendant his Miranda rights and patted him down for any weapons. The officer stated that "a large quantity of money was removed from [the Defendant's] pants, from his pockets. That money was folded over in a way that is commonly folded in narcotics traffic[king]. . . . It was folded in one thousand dollar increments." The officer explained that he and Officer Burgess took the Defendant to Officer Currey's patrol car.

Officer Eubanks testified that he then retraced the Defendant's flight into the cotton field from the highway to search for evidence. He explained that, as the Defendant ran through the cotton

field, he trampled and parted the stalks of cotton, so the Defendant's path "was almost a highway." The officer stated that he found the black bag lying to the left of the Defendant's path about halfway down the path. Officer Eubanks testified that he opened the black bag and found a loaded handgun, with ammunition in the magazine as well as one in the chamber, "ready to fire." He stated that he immediately "cleared the weapon" by removing all the ammunition. The officer explained that he also found a set of scales, a large quantity of marijuana, a plastic bag full of powder cocaine, and a plastic bag full of rock cocaine. Officer Eubanks stated that he also found a pager and a pack of cigarettes next to the black bag in the cotton field. The officer stated that he then took the bag and the other evidence to Officer Currey and the other officers and then took the Defendant and the evidence to the police department.

Officer Eubanks testified that, once they arrived at the police department, the Defendant asked whether the police officers had found his pager. The officer stated that the Defendant asked for a cigarette and told the police that he liked to smoke Newport cigarettes, the same brand that police found next to the black bag. On cross-examination, Officer Eubanks testified that the Defendant did not struggle once he apprehended him in the field. The officer stated that he did not have the handgun or the scales tested for fingerprints.

Glenn Burgess, an officer for the Somerville Police Department, testified that, on the night of September 22, 2000, he responded to a radio call that stated that officers had made a traffic stop and a suspect had fled from the vehicle on foot. The officer stated that, as he pulled into the convenience store near the cotton field, Officer Eubanks was walking back to the convenience store with the Defendant in custody. Officer Burgess testified that he then took the Defendant into custody because Officer Eubanks "was a little exhausted after the chase." He explained that, as he patted the Defendant down for safety, "there were bulges in the pockets of the pants of the [D]efendant, and upon pulling the contents out, it was cash money." Officer Burgess stated that the cash was packaged in thousand dollar bundles.

Jeffrey Dreason, a special agent forensic scientist with the TBI, testified that he tested the drugs found in the black bag at the TBI crime lab. Agent Dreason stated that he determined that the bundle of green leafy substance found in the black bag was marijuana in the amount of 353.5 grams, the rock-like substance was "crack" cocaine in the amount of 22 grams, and the white powder substance was powder cocaine in the amount of 15 grams. Thereafter, the State rested, and the Defendant did not present any proof.

## II. Analysis

On appeal, the Defendant contends: (1) that insufficient evidence exists in the record to support his convictions; and (2) that his sentence is excessive.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence presented at trial was insufficient to support his

convictions. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant was convicted of the following offenses: one count of possession of more than 0.5 grams of cocaine with intent to deliver; one count of possession of more than 0.5 ounces (14.175 grams) of marijuana with intent to deliver; and one count of felony possession of a handgun.

### 1. Possession of Controlled Substances With Intent to Deliver

Under Tennessee Code Annotated section 39-17-417(a)(4) (1997 & Supp. 2002), "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." The evidence was overwhelming that the Defendant possessed more than 0.5 grams of cocaine with intent to deliver and possessed more than 0.5 ounces (14.175 grams) of marijuana with intent to deliver. See Tenn. Code Ann. § 39-17-417(c)(1), -(g)(1). Officer Currey and Officer Eubanks testified that they witnessed the Defendant flee from the back of the suspicious vehicle and run into a nearby cotton field. Officer Currey stated that the Defendant was carrying a large object in his left hand as he ran. Officer Currey stated that officers found $4,636 in cash in the Defendant's pockets at the time of the arrest, and Officer Eubanks and Officer Burgess testified that the cash found on the Defendant was packaged in $1,000 bundles, which is common in narcotics trafficking.

Officer Eubanks stated that, after apprehending the Defendant in the cotton field, he retraced the Defendant's path through the field and found a black bag containing a loaded handgun, a bundle of marijuana, a plastic bag full of powder cocaine, a plastic bag full of "crack" cocaine, and a set of scales. The officer stated that he also found a pager and a pack of Newport cigarettes next to the black bag. The Defendant asked the officers whether they found his pager in the field, and he then

asked the officers for a cigarette, stating that he preferred Newport cigarettes, the same brand found next to the black bag. Agent Dreason stated that he determined that the bundle of green leafy substance found in the black bag was marijuana in the amount of 353.5 grams, the rock-like substance was "crack" cocaine in the amount of 22 grams, and the white powder substance was powder cocaine in the amount of 15 grams. Finally, Officer Currey testified that, during the interrogation, the Defendant "did make the statement to us sitting there that he was taking narcotics to somebody here in Somerville." After considering this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

### 2. Felony Possession of a Handgun

A person commits the crime of felony possession of a handgun when the person possesses a handgun and: "(A) [h]as been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon; or (B) [h]as been convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(A), (B) (1997). Therefore, in order for the State to convict the Defendant of felony possession of a handgun, it had to prove beyond a reasonable doubt that the Defendant possessed a handgun and had a previous felony conviction involving "the use or attempted use of force, violence or a deadly weapon" or a previous conviction of a felony drug offense. The Defendant stipulated that, at the time of the alleged offense of felony possession of a handgun, he had been convicted of a felony that would prohibit him from carrying a weapon. Officer Currey testified that the Defendant was carrying a large object in his left hand as he ran into the cotton field. Officer Eubanks stated that he found a black bag containing a loaded handgun along the Defendant's path through the cotton field. This evidence established that the Defendant possessed the handgun inside the black bag as he ran out of the vehicle and then dropped the bag in the cotton field during his flight from police. Accordingly, after viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

### B. Sentencing

The Defendant next contends that his sentence is excessive. When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any

evidence received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 400-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Commission Cmts.

Tennessee Code Annotated section 40-35-103(1) (2003) states that:

Sentences involving confinement should be based on the following considerations:
(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). The trial court may consider enhancement and mitigating factors when determining a defendant's sentence. See Tenn. Code Ann. §§ 40-35-113, -114 (2003). Moreover, if a defendant is convicted of more than one criminal offense, the trial court may order the sentences to run either consecutively or concurrently. Tenn. Code Ann. § 40-35-115(a) (2003). The trial court may order the sentences to run consecutively if the court finds by a preponderance of the evidence that certain criteria are met. See Tenn. Code Ann. § 40-35-115(b)(1)-(7). If the court finds that the criteria in Tennessee Code Annotated section 40-35-115(b) are not met, sentences shall be ordered to run concurrently. Tenn. Code Ann. § 40-35-115(d).

In the case under submission, the trial court imposed concurrent Range II sentences of eighteen years for possession of more than 0.5 grams of cocaine with intent to deliver, three years for possession of more than 0.5 ounces of marijuana with intent to deliver, and three years for felony possession of a handgun. The trial court enhanced the sentence for cocaine possession by six years and enhanced the sentences for marijuana possession and felony possession of a handgun by one year each. See Tenn. Code Ann. § 40-35-112(b) (2003). The Defendant and the State stipulated that the only evidence received at the sentencing hearing was the Defendant's pre-sentence report prepared by the Tennessee Department of Correction. The Defendant contends that "the trial court erred in not giving the Defendant's mitigating factor (the Defendant's criminal conduct neither caused nor threatened serious bodily injury) sufficient weight." However, the Defendant failed to file the transcript of the sentencing hearing on appeal, so we cannot review the trial court's findings at the sentencing hearing regarding what mitigating or enhancement factors the trial court applied.

It is the duty of the Defendant to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of his appeal. Tenn. R. App. P. 24(b); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); State v. Hopper, 695 S.W.2d 530, 537 (Tenn. Crim. App. 1985). When the record is incomplete, or does not contain the proceedings relevant to an issue, this Court is precluded from considering this issue. Gibson, 973 S.W.2d at 244; Hopper, 695 S.W.2d at 537; State v. Morton, 639 S.W.2d 666, 668 (Tenn. Crim. App. 1982). Furthermore, this Court must conclusively presume that the ruling of the trial court was correct in all particulars. Gibson, 973 S.W.2d at 244; State v. Taylor, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983). Because the Defendant failed to file the sentencing hearing transcript, we must presume that the ruling of trial court regarding the Defendant's sentence was correct. Accordingly, we conclude that the Defendant's sentence in this case was not excessive.

We note that, even in the absence of the sentencing hearing transcript, the pre-sentence report contains ample evidence to support enhancement factors under Tennessee Code Annotated section 40-35-114(2), (9), (10) and (14). First, the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(2). The pre-sentence report indicates that the Defendant had fifteen prior convictions between 1993 and 2000, including evading arrest, driving with a revoked license, speeding, felony possession of a handgun, and possession of cocaine. Second, the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(9). The pre-sentence report indicates that the Defendant had his probation revoked for a felony drug offense in 1994 and revoked again in 1997 and 2001. Third, the Defendant possessed a handgun during the commission of the drug offenses in this case because Officer Eubanks found a loaded handgun in the black bag. Tenn. Code Ann. § 40-35-114(10). Finally, the Defendant was on parole at the time he committed the offenses in this case. Tenn. Code Ann. § 40-35-114(14). All of these enhancement factors outweigh the possible mitigating factor that the Defendant's criminal conduct neither caused nor threatened serious bodily injury.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we conclude that sufficient evidence exists in the record to support the Defendant's convictions and the trial court did not err in sentencing the Defendant. Therefore, we AFFIRM the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE