# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 10, 2002

## STATE OF TENNESSEE v. LAKISHA S. THOMAS

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-188     Cheryl Blackburn, Judge**

---

### No. M2001-01717-CCA-MR3-CD - Filed October 31, 2002

---

The defendant, Lakisha S. Thomas, was convicted by a Davidson County Criminal Court jury of aggravated assault, a Class C felony, and reckless aggravated assault, a Class D felony. The trial court sentenced her as a Range I, standard offender to concurrent sentences of five years for the aggravated assault conviction and three years for the reckless aggravated assault conviction. The defendant appeals, claiming that the evidence is insufficient to support her convictions and that the trial court committed various sentencing errors. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Sam E. Wallace, Jr., Nashville, Tennessee, for the appellant, Lakisha S. Thomas.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to an altercation between the defendant and Tashia Hardin that resulted in the shooting of Prevaka Briggs. Ms. Briggs testified that on September 17, 1997, she was living in Preston Taylor Homes, a Nashville housing development. She said that earlier in the day, she had attended her husband's funeral and that in the evening, she went to Tashia Hardin's apartment to play cards. She said that as she was walking on the sidewalk to Ms. Hardin's apartment, the defendant and Tamela "Poo" Murphy were walking in front of her. She said that the three of them were walking in the same direction and that as she went into Ms. Hardin's apartment, the defendant and Ms. Murphy went into another apartment that was two doors down. She said that later, she and Ms. Hardin were standing on the sidewalk in front of Ms. Hardin's apartment and that their friend Shantonya Hyde was sitting on Ms. Hardin's front porch. She said that she saw the defendant and

Ms. Murphy come out of the nearby apartment and walk on the sidewalk toward her and Ms. Hardin. She said that two girls named "Allison" and "Winkie" were walking with the defendant and Ms. Murphy.

Ms. Briggs testified that the defendant was walking in front of Ms. Murphy and that the defendant had one hand behind her body. She said that she saw Ms. Murphy hand something to the defendant and that the defendant told Ms. Hardin, "You need to keep my name out of your mouth." She said that the defendant hit Ms. Hardin in the head with a small gun and that Ms. Hardin and the defendant scuffled. She said that Ms. Hardin pulled out a gun and hit the defendant with it. She said that during the altercation, she moved from the sidewalk onto Ms. Hardin's front porch. She said that the defendant backed away from Ms. Hardin and shot at Ms. Hardin. She said that Ms. Hardin tried to shoot back at the defendant but that Ms. Hardin's gun would not fire.

Ms. Briggs testified that she stepped off the porch and felt dizzy. She said she felt something hot running down her neck and realized that she had been shot. She said paramedics took her to Vanderbilt Hospital where she was treated for a graze wound to her head that was caused by a small caliber bullet. She said that Ms. Hardin's gun never fired and that the defendant shot her. She said that before the incident in question, she, Ms. Hardin, and Ms. Hyde had not had any arguments or disagreements with the defendant or Ms. Murphy.

On cross-examination, Ms. Briggs testified that before the shooting, she, Ms. Hardin, and Ms. Hyde had been playing cards in Ms. Hardin's backyard. She said that when they finished playing cards, they went in front of Ms. Hardin's apartment. She acknowledged that the shooting happened in front of Ms. Hardin's apartment about 10:45 p.m. She said that the sidewalk in front of Ms. Hardin's apartment was dark and that no lights were in the immediate area. At first, Ms. Briggs testified that she did not leave Ms. Hardin's apartment while the women were playing cards. Later, she said that she did leave the apartment. She denied making up her testimony or giving Ms. Hardin the gun that Ms. Hardin used in the altercation.

Shantonya Hyde testified that before September 17, she had never witnessed Ms. Hardin or Ms. Briggs argue with the defendant or Ms. Murphy. She said that before the shooting, she had been playing cards with Ms. Briggs and Ms. Hardin in Ms. Hardin's backyard. She said that while they were playing cards, the defendant and Ms. Murphy kept driving by Ms. Hardin's apartment and calling them "bitches and stuff like that." She said that after they finished playing cards, they sat on Ms. Hardin's front porch. She said that her oldest son and Ms. Hardin's two children were outside with them. She said she saw the defendant, Ms. Murphy, and a couple of other girls walking on the sidewalk toward Ms. Hardin's apartment. She said that the defendant was walking in front of Ms. Murphy and that she saw Ms. Murphy hand a gun to the defendant. She said that she told Ms. Hardin, "Watch out, Tashia, she got a gun." She said that the defendant walked up to Ms. Hardin and hit Ms. Hardin in the head with the gun. She said that the defendant and Ms. Hardin exchanged words and scuffled. She said that the defendant took a couple of steps backward and fired in Ms. Hardin's and Ms. Briggs' direction. She said that Ms. Hardin tried to shoot at the defendant but that

the gun would not fire. She said that the defendant ran away and that she saw Ms. Briggs lying on the ground.

On cross-examination, Ms. Hyde acknowledged that she had prior convictions for passing worthless checks, theft, and felonious possession of cocaine. She said that she was not living in Preston Taylor Homes on September 17, but that she had gone there to play cards at Ms. Hardin's apartment. She said that they played cards for a couple of hours and that no one was drinking or using drugs. She said that when it got dark, they quit playing and that Prevaka Briggs went back to Ms. Briggs' apartment. She said that she and Ms. Hardin went outside onto Ms. Hardin's front porch and that she saw Ms. Briggs walking back to Ms. Hardin's apartment. She said that the defendant and Ms. Murphy were walking in front of Ms. Briggs. She said that just before the shooting, she saw the defendant and Ms. Murphy come out of Reneka Nichols' apartment. She said that in 1996, she had complained to the Metropolitan Development Housing Agency (MDHA) that Ms. Nichols had been shooting at her. She said that she did not know whether her complaint resulted in the MDHA evicting Ms. Nichols from Preston Taylor Homes.

Tashia Hardin testified that on September 17, 1997, Prevaka Briggs and Shantonya Hyde came to her apartment at 953 Presslor Drive in Preston Taylor Homes. She said that while they were sitting in the backyard playing cards, she saw the defendant and Ms. Murphy driving through the housing development. She said she had never had any arguments with the defendant. She said that later that evening, she, Ms. Briggs, and Ms. Hyde were outside in front of her apartment. She said that her seven- and five-year-old sons and Ms. Hyde's young son also were outside. She said that the defendant and Ms. Murphy were walking toward her but that she had her back to them. She testified that Ms. Hyde said, "[Here] they come" and "[She's] got a gun." She said she turned around and faced the defendant and Ms. Murphy. She said that the defendant told her to keep the defendant's name out of her mouth and that the defendant hit her in the head with the gun.

Ms. Hardin testified that she and the defendant scuffled and that she pulled out her gun and hit the defendant in the head with it. She said the defendant took a few steps back and started shooting at her. She said that Ms. Briggs was standing behind her on the front porch and that the defendant shot all of the bullets out of the defendant's gun. She said that after the defendant stopped shooting at her, she tried to shoot back at the defendant. She said that her gun's safety latch was on and that the gun would not fire.

Ms. Hardin testified that she ran onto her porch and that Ms. Hyde was trying to get the children inside the apartment. She said that after the shooting, the defendant and Ms. Murphy ran away. She said that when the police arrived, she talked to Detective Clifford Man. She said that she did not tell Detective Mann that she had pulled a gun on the defendant.

On cross-examination, Ms. Hardin acknowledged that she had a previous felony conviction for possessing cocaine. She said that on September 17, Reneka Nichols lived in the apartment that was three doors down from her apartment. She said that she, Prevaka Briggs, and Shantonya Hyde had not been drinking alcohol. She said that at some point, Ms. Briggs left Ms. Hardin's apartment

but that Ms. Briggs returned about ten minutes before the shooting occurred. She said that at the time of the shooting, her front door was open and light from her apartment was shining into the front yard.

Ms. Hardin testified that her gun was a small .22 or .25 caliber automatic. She said that she did not know what type of gun the defendant had but that the defendant fired about three shots. She said that when the police arrived at the scene, Detective Mann came to her apartment and that Ms. Hyde talked to him. She acknowledged knowing that it was a crime for a convicted felon to possess a gun. She said the state promised not to prosecute her if she testified against the defendant.

Officer Mark Burns of the Metro Police Department testified that about 10 p.m. on September 17, 1997, he responded to a shooting at Preston Taylor Homes. He was the first officer on the scene and people were screaming and yelling. It appeared that Ms. Briggs had been shot in the head, and emergency personnel arrived and began working on her. When other officers arrived at the crime scene, they looked for shell casings and found .25 caliber automatic shell casings in front of apartment 951. On cross-examination, Officer Burns testified that the crime scene was fairly dark and that he had to use his flashlight in order to look for evidence.

Officer George Bowden of the Metro Police Department testified that at 10:35 p.m. on September 17, he was called to the scene of a shooting at 953 Presslor Drive. When he arrived at the scene, he took photographs and recovered evidence, including four .25 caliber shell casings. Officers Bowden found the shell casings near apartment 953. On cross-examination, he said that all of the shell casings were from the same caliber bullet but that two were manufactured by Winchester and two were manufactured by Remington. According to his report, Prevaka Briggs appeared to be the target of the assault. Although he did not recall lighting conditions at the crime scene, he acknowledged that crime scene photographs showed that it was dark on the sidewalk in front of Ms. Hardin's apartment.

Detective James Sledge of the Metro Police Department testified that he investigated the shooting at Preston Taylor Homes. When he arrived at the housing development, the crime scene had been secured, and he talked to Tashia Hardin. Detective Sledge also went to Vanderbilt Hospital to interview Ms. Briggs. Although Ms. Briggs had received a grazing gunshot wound to the right rear of her head, she was able to talk to Detective Sledge and give him the name "Poo." As a result of the interview and his investigation, Detective Sledge developed the defendant and Ms. Murphy as suspects. He also delivered the four shell casings that the police had found at the crime scene to the Tennessee Bureau of Investigation's (TBI) Crime Lab. TBI specialists determined that two of the casings were fired from the same gun. The results as to the other two casings were inconclusive. According to Detective Sledge, it was not unusual to find shell casings on the ground in the area of the shooting.

On cross-examination, Detective Sledge testified that although the shell casings were recovered in a well-lit area, police officers had to use their flashlights to find them. He did not recall whether the streetlight near Ms. Hardin's apartment was working on September 17. On September

24, Detective Sledge had warrants issued against the defendant and Ms. Murphy for the aggravated assault of Ms. Briggs. He did not have warrants issued for any offenses committed against Ms. Hardin because she did not say she was a victim. He thought she was merely a witness to the shooting. During Detective Sledge's interview of Ms. Briggs, Ms. Briggs told him that the defendant and Ms. Murphy had come to Preston Taylor Homes to look for her.

Tamela Murphy testified that on September 17, 1997, she rode with the defendant to Preston Taylor Homes. She said that she and the defendant were friends and that they went to the housing development to visit relatives. She said that they arrived there about 3:00 p.m. and that as they drove to her cousin's apartment, they passed Ms. Hardin's apartment. She said they did not see or speak to Tashia Hardin, Shantonya Hyde, or Prevaka Briggs. She said that later, she and the defendant were walking on the sidewalk and Ms. Briggs was walking behind them. She said Ms. Briggs went into Ms. Briggs' apartment for a brief time and then started walking behind them again. She said that she and the defendant were walking toward Ms. Hardin's apartment and that she noticed Ms. Hardin and Ms. Hyde were on Ms. Hardin's front porch.

Ms. Murphy testified that as she and the defendant approached Ms. Hardin's apartment, she was walking beside, not behind, the defendant and that she did not hand anything to the defendant. She said that Ms. Hardin said something to the defendant and that Ms. Hardin had a knife in her hand. She said that the defendant grabbed the knife and that the two women scuffled. She said that Ms. Hardin cut the defendant's arm, pulled out a gun, and shot one time into the air.

Ms. Murphy testified that the defendant also pulled out a gun and shot into the air. She said she thought they were trying to scare each other. She said that after the incident, she and the defendant walked back to the defendant's car. She said that they did not know that anyone had been hurt and that they did not call the police. She said the police did not contact her before a warrant was issued for her arrest. She said she turned herself in to the police.

On cross-examination, Ms. Murphy acknowledged having a prior conviction for theft of property. She said that although she and the defendant arrived at Preston Taylor Homes about 3:00 p.m., they rode around for a couple of hours before they visited relatives. She said that after they finished visiting family members, she and the defendant walked to a nearby store. She said that the defendant's car was still parked at Preston Taylor Homes and that in order to get back to the car, they needed to walk by Ms. Hardin's apartment.

Ms. Murphy testified that earlier in the day, Reneka Nichols had told her and the defendant that Ms. Hardin, Ms. Briggs, and Ms. Hyde were going to do something to them. She acknowledged that despite this, she and the defendant decided to walk by Ms. Hardin's apartment. She said that she and the defendant had not had any run-ins with Ms. Hardin, Ms. Briggs, or Ms. Hyde before the crimes in question. Unlike her direct testimony, Ms. Murphy testified that when she and the defendant approached Ms. Hardin's apartment, Ms. Hardin said something to the defendant, and the defendant hit Ms. Hardin with her fist. She said that after the defendant hit Ms. Hardin, Ms. Hardin pulled a knife on the defendant. She said that at some point, Ms. Hardin dropped the knife, pulled

out a gun, and fired into the air. She said that the defendant pulled out a gun and also fired into the air. Ms. Murphy testified on cross-examination that she had not known the defendant was carrying a gun on September 17.

The defendant testified that at the time of the offenses in question, she did not live in Preston Taylor Homes but often went there on her days off work. She said that on September 17, she and Ms. Murphy drove to the housing development, parked the defendant's car, and visited Ms. Murphy's cousin. She said that at some point, Reneka Nichols called her on her cellular telephone and told her that Ms. Hardin and Ms. Hardin's friends were holding guns and standing outside. She said she took her gun out of her car's glove compartment and carried it for protection.

The defendant testified that after she and Ms. Murphy visited Ms. Murphy's cousin, they walked to the store. She said that they started walking back to her car and that the quickest way to get from the store to her car was to walk by Ms. Hardin's apartment. She said that as they were walking back to her car, Ms. Briggs passed them and went into Ms. Briggs' apartment. She said Ms. Briggs came out of the apartment and started walking behind them. She said that Ms. Hardin was standing on the sidewalk in front of Ms. Hardin's apartment and that as they approached Ms. Hardin, Ms. Hardin said something to her. She said that she hit Ms. Hardin with her fist and that Ms. Hardin pulled a knife. She said that she grabbed Ms. Hardin's arm and that Ms. Hardin cut her arm. She testified that she did not know Ms. Hardin had cut her until she got home. She said that her mother put a Band Aid on the cut.

The defendant testified that after Ms. Hardin cut her, Ms. Hardin pulled out a gun. She said she let go of Ms. Hardin's arm and ducked down. She said Ms. Hardin pointed the gun at her and fired it. She said Ms. Hardin did not fire the gun into the air. She said that she did not know how many times Ms. Hardin fired the weapon but that she pulled her own gun and fired it two or three times into the air. She said that Ms. Hardin was standing directly in front of her and that she was just trying to scare Ms. Hardin. She said that she did not intend to shoot anyone and that she was afraid for her life. She said that when she left Preston Taylor Homes, she did not know that Ms. Briggs had been shot. She denied that she walked in front of Ms. Hardin's apartment intending to confront Ms. Hardin.

On cross-examination, the defendant testified that sometime before the altercation, someone called her on her cellular telephone and told her that Ms. Hardin and Ms. Hardin's friends had guns and were waiting around the store for her. She said the person also told her that Prevaka Briggs gave Ms. Hardin a gun in order for Ms. Hardin to shoot the defendant. She said that she did not take this information seriously. She acknowledged that despite having heard that Ms. Hardin wanted to harm her, she decided to walk toward Ms. Hardin's apartment.

The defendant acknowledged giving a statement to Sergeant Dwayne Phillips when she was arrested. She said she told Sergeant Phillips that Ms. Hardin pulled a knife on her. She said, though, that she did not tell him that Ms. Hardin cut her. She also acknowledged telling Sergeant Phillips that a girl named Allison Martin was with her and Ms. Murphy at the time of the crimes in question.

The defendant testified that she told Sergeant Phillips that she threw the gun away after the altercation. She said she was positive that she did not shoot Prevaka Briggs.

The jury convicted the defendant of aggravated assault against Tashia Hardin. Although the jury found the defendant not guilty of aggravated assault with a deadly weapon against Prevaka Briggs, it convicted her of the lesser included offense of reckless aggravated assault.

First, the defendant contends that the evidence is insufficient to support her convictions. Specifically, she claims that her testimony shows that Ms. Hardin came at her with a knife and that she fired into the air to scare Ms. Hardin, who was uninjured. She also claims that the evidence is insufficient to show that the she shot Prevaka Briggs. The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

As charged in the indictment, a person commits Class C felony aggravated assault by intentionally or knowingly causing another reasonably to fear imminent bodily injury while using or displaying a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2); -102(a)(1)(B). Viewed in the light most favorable to the state, the evidence shows that the defendant committed aggravated assault against Tashia Hardin. The defendant walked up to Ms. Hardin and hit Ms. Hardin in the head with a gun. Ms. Hardin scuffled with the defendant, the defendant took a few steps back, and the defendant shot at Ms. Hardin. Ms. Hardin pulled out a gun and tried to shoot back at the defendant but her gun would not fire. Although Ms. Hardin did not testify that she was afraid of the defendant's actions, we believe that a rational jury could infer that Ms. Hardin's pulling out her gun and attempting to shoot back at the defendant resulted from her fear of imminent bodily injury. <u>See</u> <u>Stinson v. State</u>, 181 Tenn. 172, 178, 180 S.W.2d 883, 885 (1944) (noting the general rule that a party may prove a material fact by direct or circumstantial evidence); <u>see also</u> <u>State v. James Albert Adams</u>, No. M1998-00468-CCA-R3-CD, Davidson County (Tenn. Crim. App. Dec. 15, 1999) (inferring the victim's fear from the circumstances of the offense even though she did not testify that she was afraid). The jury chose to believe the testimony of other witnesses over that of the defendant, and that is its prerogative. <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). The evidence is sufficient to support the defendant's conviction for aggravated assault.

We also believe that the evidence is sufficient to support the defendant's conviction for reckless aggravated assault against Prevaka Briggs. Ms. Briggs was standing on the sidewalk talking to Ms. Hardin when the defendant approached Ms. Hardin and hit Ms. Hardin in the head. At some

point, the defendant began shooting at Ms. Hardin. Ms. Briggs testified that during the altercation, she left the sidewalk and went onto Ms. Hardin's front porch. Ms. Hardin said that while the defendant was shooting at her, Ms. Briggs was standing behind her on her front porch. Shantonya Hyde also testified that the defendant was shooting in the direction of Ms. Hardin and Ms. Briggs. Viewed in the light most favorable to the state, the evidence shows that the defendant was the only person who fired a gun and, therefore, the only person who could have shot Ms. Briggs. The evidence is sufficient to support the defendant's conviction for reckless aggravated assault.

We note that the defendant's brief states that the prosecution presented no evidence that Prevaka Briggs suffered serious bodily injury. Serious bodily injury, though, was not required in order for the jury to convict the defendant of reckless aggravated assault as a lesser included offense of aggravated assault as charged in the indictment. See Tenn. Code Ann. §§ 39-13-101(a)(1), –102(a)(2)(B). The indictment alleges that the defendant committed aggravated assault by intentionally or knowingly causing bodily injury to Ms. Briggs while using or displaying a deadly weapon. See Tenn. Code Ann. §§ 39-13-101(a)(1), -102(a)(1)(B). Therefore, serious bodily injury is not an issue in this case, and the defendant is not entitled to relief.

Finally, the defendant raises several sentencing issues, including that the trial court improperly enhanced her sentence and that she was entitled to an alternative sentence. However, as the state points out, the defendant has failed to include the sentencing hearing transcript in the record on appeal. A trial court's sentencing determinations are entitled to a presumption of correctness upon review. See Tenn. Code Ann. § 40-35-401(d). The duty is now upon the defendant to show what was incorrect about the sentencing process. In the absence of the sentencing hearing transcript, which is essential for our review, we are to presume that the trial court's rulings are correct, and we are precluded from considering any sentencing issue in this case. See State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997).

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE