IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. MIKE LAFEVER

**Direct Appeal from the Criminal Court for Putnam County**
**No. 01-0579     Lillie Ann Sells, Judge**

---

**No. M2003-00506-CCA-R3-CD - Filed January 30, 2004**

---

The Defendant, Mike Lafever, was indicted on three counts of theft. A jury subsequently convicted him of one count of theft over $10,000, a Class C felony, and one count of theft over $1,000, a Class D felony. The jury assessed fines of $10,000 and $5,000 for these offenses, respectively. The jury acquitted him of the other count. The trial court sentenced the Defendant to five and one-half years for the Class C felony, and to three and one-half years for the Class D felony. The sentences were ordered to run concurrently and to be served on community corrections. In this direct appeal, the Defendant argues that the trial court erred in refusing to admit a statement he made to the police; erred in refusing to instruct the jury on mistake or ignorance of fact; that the evidence is not sufficient to support his convictions; that his sentences are excessive; and that the trial court should have waived his fines. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Marshall Judd, Cookeville, Tennessee, for the appellant, Mike Lafever.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Bill Gibson, District Attorney General; and David A. Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Brenda Sue Willis testified that she owned a 2000 Dodge Dakota Club Cab pickup truck on September 16, 2000. On that date, she parked her truck behind the market where she worked. When she returned to her parking place later that day, her truck was gone. There was broken glass on the ground where the truck had been parked. Ms. Willis called the police. She was later notified that parts of the truck had been located. In conjunction with making an insurance claim, Ms. Willis

delivered her keys to the truck to her insurance company. Ms. Willis stated that she did not consent to anyone taking her truck.

Arnold Kinnard testified that he owned a wrecker business and that one of his wreckers was stolen from his lot in the fall of 2000. He stated that the stolen wrecker was worth approximately $15,000. Mr. Kinnard notified the police. He identified photographs of parts of the wrecker that were later recovered.

Gordon King testified that he owned a towing business and, in November 2000, a 1986 GMC wrecker was stolen off of his lot. Mr. King reported the theft and later recovered his stolen vehicle from the city lot. Mr. King testified that, at the time it was stolen, the wrecker was worth approximately $12,500. When he recovered it, the steering column had been damaged; the front bumper was missing; and the new front aluminum wheels and tires were missing. Also, all of his identifying signage on the doors of the wrecker had been removed and painted over. Mr. King testified that he never gave the Defendant permission to have his wrecker.

Agent Randall Gothard with the Tennessee Highway Patrol testified that he visited the Defendant's salvage yard in December 2000. The Defendant gave his consent to a search of his yard. Agent Gothard found pieces of a red 2000 Dodge pickup truck, including both doors. Agent Gothard explained that these pieces were not together, but were spread out over the yard. Additionally, the parts were hidden in other vehicles and under pieces of carpet. The identification markings on these parts had been "removed, altered, defaced" such that they could not be read. Agent Gothard spoke with Ms. Willis about her stolen vehicle and recovered the key from the insurance company. The key fit the doors found at the Defendant's salvage yard.

In addition to finding the parts of Ms. Willis' vehicle, Agent Gothard also located parts of Mr. Kinnard's missing wrecker on the Defendant's lot. Agent Gothard testified that there had also been identifying marks removed from one of these parts.

Agent Troy Human with the Tennessee Highway Patrol testified that he accompanied Agent Gothard to the Defendant's salvage yard. He explained that a VIN identification plate had been removed from a wrecker recovered at the Defendant's yard, and was determined to belong to a different vehicle, a 1981 Chevrolet pickup truck. This vehicle's title was held in the Defendant's name as of October 1, 2000. Inside the wrecker were found a license plate and a corresponding application for registration filed by the Defendant in December using the Chevrolet pickup's VIN. The wrecker was later determined to be the one stolen from Mr. King's lot.

Agent Human testified that, when he confronted the Defendant with his suspicions about the King wrecker, the Defendant responded, "I was afraid you was going to ask about that, just go ahead and take it." Agent Human explained on cross-examination that the Defendant later told him that he had bought the wrecker from his cousin, Rick Lafever. The Defendant also told him that the wrecker parts belonging to Mr. Kinnard had been left at his lot by Rick Lafever.

At the conclusion of proof, the jury determined that the Defendant was guilty of one count of theft over $10,000 (for the theft of Mr. King's wrecker) and one count of theft over $1,000 (for the theft of Ms. Harris' Dodge pickup). The jury acquitted the Defendant of the alleged theft of Mr. Kinnard's wrecker.

Initially, the Defendant challenges the trial court's refusal to admit into evidence a written statement that the Defendant made to the police. That statement reads as follows:

> The red [King] wrecker that is in question was brought to my residence approximately 1 ½ weeks ago which was in November 2000. I paid $1600 cash and took off approximately $400 or more that was owed to me. I paid the $1600 in two separate installments. The deal was with one individual. The wrecker was as it is now, with now [sic] identifying numbers, and a peeled steering column. I was going to repair the column. I received a title from the individual that I bought the truck from.
> Both trucks found on my property with out VIN plates are unknown to me where the plates went. I bought one of them from Elmor Williams and the other from Junior Wheeler.
> The frame in question as to possibly be the one belonging to Kinnard's was dropped off at my place a couple of months ago by someone whom I don't want to name at this time. I paid approximately $300 to $500 in cash and took off some owed to me for the frame and bed. I was owed from some parts that [were] faulty.

At trial, counsel for the State objected to the admission of this statement on the basis that it was hearsay. Defense counsel responded that it was "really an admission against the interest," and that, since Agent Human had already testified about what the Defendant told him, it was "the best evidence" of that. The trial court determined that the statement was self-serving hearsay and not admissible.

We agree with the trial court. The statement is clearly hearsay. See Tenn. R. Evid. 801(c). Hearsay is generally not admissible unless pursuant to an exception provided by our Rules of Evidence. See Tenn. R. Evid. 802. The hearsay exception for statements against interest does not apply to the Defendant's statement. First, this exception is applicable only if the declarant is unavailable as a witness. See Tenn. R. Evid. 804(b). Here, the declarant was the Defendant, who was available to testify. Furthermore, a statement against interest is one "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Tenn. R. Evid. 804(b)(3). The Defendant's statement is an attempt to explain how he came to be in legitimate possession of stolen property. It does not satisfy the criteria for the statement against interest hearsay exception. This issue is without merit.

On appeal, the Defendant contends that his statement should have been admitted under the hearsay exception for "then existing state of mind." See Tenn. R. Evid. 803(3). However, a defendant may not offer one theory at trial for the admissibility of evidence, and then offer a different theory on appeal. See State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) ("It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal."). Moreover, the Defendant's statement does not meet the criteria for this exception. Tennessee Rule of Evidence 803(3) provides for the admissibility of statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." That is, to qualify for this exception, the statement must be one made at the time of the event in question. Here, however, the Defendant's statement to Agent Human was not a declaration of his state of mind at the time he came into possession of the stolen vehicles; it was a statement made long after the fact, that is, as a statement of memory or belief as to how the Defendant had gained possession of the vehicles. The statement was not admissible under this exception, and this issue is without merit.

The Defendant also contends that the evidence is not sufficient to support his convictions. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The Defendant was convicted of two counts of theft of property. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. The Defendant was convicted of the thefts of Mr. King's wrecker and Ms. Willis' pickup (or parts thereof). The Defendant claims that his convictions should be reversed because there is no proof that he knew that the King wrecker or Willis parts found on his property were stolen. We disagree. With respect to the King wrecker, Agent Human testified that, when confronted about that vehicle, the Defendant stated, "I was afraid you was going to ask about that, just go ahead and take it." Moreover, the wrecker's VIN plate had been removed and replaced with the VIN plate from a pickup truck owned by the Defendant. This evidence is sufficient to support the inference that the Defendant did, indeed, know that the wrecker was stolen. This conviction is therefore supported by the proof. As to the Willis pickup, the proof established that the various parts to the truck were separated from each other and hidden from view. The parts were on the Defendant's property and the Defendant made a statement to Agent Human indicating that he knew they were there. The Defendant was in the business of selling car parts. That pieces of the Defendant's inventory were hidden supports the inference that the Defendant knew that the parts did not rightfully belong to him. While not overwhelming, this proof is sufficient to sustain the Defendant's conviction. This issue is without merit.

The Defendant also contends that the trial court erred by refusing to give a requested jury instruction. The Defendant requested the trial court to instruct the jury that "ignorance or mistake of fact is a defense to prosecution if such ignorance or mistake negates the culpable mental state of the charged offense." Tenn. Code Ann. § 39-11-502(a). The offense charged in this case was theft. As set forth above, the offense of theft is committed where "with intent to deprive the owner of property, the [accused] knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. Obviously, the Defendant had knowing possession of the property in question. The issue, therefore, is whether he gained or retained possession with the intent to deprive the owner of the property. The Defendant contends that he was mistaken or ignorant about the ownership of the stolen vehicles, and adduced sufficient proof of that defense to warrant a jury instruction. The trial court determined that the Defendant had not raised sufficient proof of the defense to require the instruction, and thus denied the Defendant's request.

We recognize, of course, that a criminal defendant has the right to have each issue of fact raised by the evidence and material to his or her defense submitted to the jury upon proper instructions by the trial court. See State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992). Ignorance or mistake of fact is a defense to prosecution, and the trial court must instruct the jury on this defense if it is fairly raised by the proof. See Tenn. Code Ann. §§ 39-11-203(a), (c), 39-11-502(a). In determining whether a defense is fairly raised by the proof, a trial court should consider the evidence in the light most favorable to the defendant. See State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

The only proof of the Defendant's state of mind regarding the stolen vehicles came in through Agent Human's testimony. Agent Human stated that, when he initially began speaking with the

Defendant at the Defendant's salvage yard, he explained that he was looking for stolen vehicles and parts to vehicles. When Agent Human then confronted the Defendant with his suspicions about the King wrecker, the Defendant responded, "I was afraid you was going to ask about that, just go ahead and take it." However, Agent Human also stated that the Defendant later told him that he had purchased the wrecker, but refused to reveal from whom he had bought it. Agent Human further explained that, after the Defendant spoke with his lawyer, he told Agent Human that he had purchased the wrecker from his cousin Rick Lafever, "and that Rick was waiting on him to get done talking to [Agent Human] so they could confer more." As to the Dodge parts, Agent Human testified that the Defendant told him only that Rick Lafever had dropped those parts off and that the Defendant and Rick Lafever had "been in a discussion over those parts."

We agree with the trial court that the Defendant simply did not adduce sufficient proof of his alleged ignorance or mistake of fact to warrant a jury instruction. Accordingly, this issue is without merit.

The Defendant also challenges his sentences. With respect to the conviction for the theft of the King wrecker, the trial court sentenced the Defendant as a Range I standard offender to five years and six months, to be served on community corrections. With respect to the second conviction, the trial court sentenced the Defendant to a concurrent sentence of three years and six months, also to be served on community corrections. Additionally, the jury assessed fines of $10,000 and $5,000, respectively. The Defendant now complains that the trial court should have shortened the terms of his sentences on the basis of certain mitigating factors; that his sentences are excessive when compared to the sentences received by his co-defendant; and that the trial court should have waived his fines. The State responds that the trial court did not err in sentencing the Defendant.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that

the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

We will initially address the Defendant's concerns regarding the trial court's application of mitigating factors. The Defendant's conviction for the theft of the King wrecker is a Class C felony, see Tenn. Code Ann. § 39-14-105(4), exposing the Defendant to a sentencing range of three to six years, see id. § 40-35-112(a)(3). The Defendant's conviction for the theft of the Willis pickup is a Class D felony, see id. § 39-14-105(3), exposing the Defendant to a sentencing range of two to four years, see id. § 40-35-112(a)(4). The presumptive sentence for Class C and D felonies is the minimum in the range, increased as appropriate for applicable enhancement factors, and decreased as appropriate for applicable mitigating factors. See id. § 40-35-210(c), (e).

After a sentencing hearing, the trial court found as enhancement factors that the Defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and that he "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Id. § 40-35-114(2), (9). The proof supports application of these enhancement factors, and the Defendant does not contest them. In mitigation, the trial court found that the Defendant's "criminal conduct neither caused nor threatened serious bodily injury." Id. § 40-35-113(1). The Defendant asserts that, as an additional mitigating factor, the trial court should have found that he "assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses," and that he "assisted the authorities in locating or recovering any property or person involved in the crime." Id. § 40-35-113(9), (10).

In support of his assertion, the Defendant relies on a report from the Tennessee Highway Patrol Criminal Investigation Division introduced as an exhibit to the sentencing hearing. However, that exhibit is not included in the record before us and we therefore cannot consider it. See State v. Robinson, 73 S.W.3d 136, 154 (Tenn. Crim. App. 2001) ("Generally, this court is precluded from addressing an issue on appeal when the record fails to include relevant documents."); see also Tenn. R. App. P. 24(b). The Defendant's attempt to include this report as an attachment to his brief is of no avail. See State v. Matthews, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990). The trial court specifically refused to apply these mitigation factors, and the record does not persuade us that the trial court thereby erred. This issue is without merit.

The Defendant also complains that his sentence reflects an "illegally unjustified disparity" when compared to his co-defendant Rick Lafever's sentence. The Defendant raised this issue in his motion for new trial and argued it to the trial court at that hearing. The trial court found this issue to be without merit. The transcript of the motion for new trial hearing indicates that Rick Lafever was indicted along with the Defendant, but entered a guilty plea and received a sentence of two years on probation. However, the record does not contain a copy of the judgments of conviction with regard to Rick Lafever, and further does not contain a copy of the transcript of his guilty plea proceeding or his presentence report. Accordingly, this Court has no way of knowing how Rick Lafever's sentence actually compares to the Defendant's. The Defendant having offered us insufficient information with which to analyze this issue, we must presume the trial court's ruling was correct. See State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997).

Finally, the Defendant complains that the trial court should have waived the fines assessed by the jury. In his motion for new trial, the Defendant raised as an issue that "the fines returned by the jury are excessive and should be reduced." At the hearing on the motion, defense counsel told the court that the Defendant was indigent. The transcript of the hearing indicates that the Defendant was no longer serving his sentence on community corrections and had been incarcerated. Nevertheless, the trial court determined to "leave the fines as they are" with the apparent hope that the Defendant would eventually get out on parole and begin working. The court noted that the fines could be reconsidered at a later date, if appropriate. We also note that the trial court referenced a previous finding of indigency.

Our supreme court has determined that "the decision of whether to grant a waiver of [fines] . . . rests within the court's discretion; and that decision cannot be reversed in the absence of evidence in the record which indicates that 'such discretion has been explicitly abused to the great injustice and injury of the party complaining.'" State v. Black, 897 S.W.2d 680, 684 (Tenn. 1995) (quoting Douglas v. Estate of Robertson, 876 S.W.2d 95, 97 (Tenn. 1994)). On the record before us, we see no such abuse of discretion. There is no proof in the record regarding how the imposition of the fines will work a financial hardship on the Defendant, other than an earlier finding of indigency. By the time the Defendant is required to begin paying the fines, his financial circumstances may have altered significantly, for instance, through an inheritance. The record is simply insufficiently developed for this Court to second-guess the trial court's ruling on this matter. No abuse of discretion having been demonstrated, this issue is without merit.

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE