IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2004

## STATE OF TENNESSEE v. JEFF WILKES

**Appeal from the Circuit Court for Dyer County**
**No. C02-448     Lee Moore, Judge**

---

**No. W2003-01763-CCA-R3-CD  - Filed June 9, 2004**

---

A Dyer County Circuit Court jury convicted the defendant, Jeff Wilkes, of robbery, a Class C felony, and the trial court sentenced him as a Range I, standard offender to six years in the Department of Correction (DOC).  The defendant appeals, claiming (1) that the evidence is insufficient to support his conviction and (2) that his sentence is excessive.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Jeff Wilkes.

Paul G. Summers, Attorney General and Reporter; Michelle R. Chapman, Assistant Attorney General; C. Phillips Bivens, District Attorney General; and Karen Waddell Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the robbery of Jerry's Market on May 4, 2002.  Greg Barr, an investigator for the Newbern Police Department, testified that on May 4, 2002, at 11:09 p.m., the police received a call reporting that Jerry's Market had been robbed.  He said his investigation revealed that $710 had been taken from the store's cash register.  He said Charles Powell, Jerome Blackwell, and Thomas Williams, Jr., all juveniles, were taken into custody near the store shortly after the robbery and admitted their involvement in the robbery.  He said that he found the defendant with Cameo Edwards and Dewana Jones at the Comfort Inn in Dyersburg.  Investigator Barr recovered a pair of blue jeans, black shoes, a gray shirt with writing on it, a white shirt, and an orange shirt from the motel room.  He also confiscated the defendant's wallet, which contained thirty-eight dollars.  He said that forty dollars was found on the side of the road where the three juveniles were apprehended and that Mr. Blackwell had $268.  He said that he tried to interview the defendant but that all the

defendant said was "no face, no case." He said he had not given the defendant any details about the robbery when he made this statement.

Monica Pirtle testified that she lived three streets from Jerry's Market. She said that on the evening of May 4, 2002, she saw the defendant as she was leaving her house and that he asked her for a ride. She said that she agreed to give the defendant and another man a ride but that she did not drive them all the way to Dyersburg because she smelled beer when they got in the car.

Judith Combs testified that she and Pat Dodd worked at Jerry's Market on May 4, 2002. She said that around 11:00 p.m., three juveniles entered the store and that one answered his cellular telephone while the other two purchased an item that glowed in the dark. A few minutes after the juveniles left, a man with a red bandana covering his face entered the store and jumped over the counter, grabbing her. She said he told her not to say anything and not to touch any buttons. Another man entered the store with a T-shirt around his head to cover his face, and he grabbed Ms. Dodd. She said the man who held her dragged her to the cash register and told her to open it. The defendant held her with one arm while taking money from the register with the other. She said the defendant told her he had a gun and would shoot her if she moved or punched any buttons. She looked outside and saw the three juveniles that had been in the store just before the robbery. After the robber had the money from the register, he jumped back over the counter, stole a box of cigars, and fled with the man who had a T-shirt covering his head.

Ms. Combs testified that the man who had robbed the store was muscular and was wearing a gray shirt with an emblem on it, jeans, and muddy tennis shoes. She said that the man was African-American and that she could see his face from the nose and above. She identified the gray T-shirt that Investigator Barr found in the defendant's motel room as the same shirt the robber was wearing. She said the voice of the man who had held her sounded like the defendant's voice. She said she knew the defendant's voice because, before the robbery, they had let the defendant wash cars at the store. However, at the time of the robbery, she did not recognize the defendant as the robber. After watching a videotape, Ms. Combs identified it as an accurate recording of the robbery. On cross-examination, Ms. Combs acknowledged that she was not positive the gray T-shirt she identified was the one worn by the man that robbed the store.

Pat Dodd testified that she was the manager at Jerry's Market and that she was at the store during the robbery on May 4, 2002. She said she was in the back of the store when she saw a man with a T-shirt wrapped around his head. She said the man grabbed her and pulled her to the front of the store. She said she saw another man at the cash register holding Ms. Combs and taking money from the register. She said the man at the register then jumped over the counter, grabbed a box of cigars, and ran out the door. She said the man who stole the money was African-American and was wearing a white T-shirt with an emblem on it, jeans, and a red bandana around his face. She said $710 was stolen from the store's cash register during the robbery. On cross-examination, Ms. Dodd acknowledged that she did not recognize the defendant during the robbery even though she was aware that he had previously washed cars at the store.

Charles Powell testified that he had known the defendant his entire life and that on the night of May 4, 2002, the defendant approached him about robbing Jerry's Market. He said the defendant told him that they needed one person to rob the clerk, one person to steal the videotape, and two people to act as lookouts. He said that he agreed to be a lookout and that Mr. Blackwell agreed to go with the defendant. He said that either the defendant or Mr. Blackwell wore a red bandana around his face while the other wrapped a T-shirt around his head. He said that during the robbery, he was located at the telephone outside the store. He said that after the robbery, he was caught by the police while running through apartments located behind the store. He said he confessed to everything that had occurred, including the defendant's involvement in the robbery. On cross-examination, he testified that he received thirty days of house arrest, community service and probation for his involvement in the robbery. He said that when the police interviewed him, they told him that if he told them the truth, they would go easy on him and let him go home to sleep in his own bed.

Thomas Williams, Jr. testified that he had known the defendant for a long time and that he acted as a lookout for the defendant in the May 4, 2002 robbery. He said that he stood outside next to a phone during the robbery and that the robbery was the defendant's idea. He said that he had two red bandanas with him that night and that he gave them to the defendant in order that he could cover his face. He said that although the defendant promised him money, he never received any from the defendant. He said that the police caught him shortly after the robbery and that he told the police everything, including everyone involved in the robbery. On cross-examination, Mr. Williams testified that he received fifty days of house arrest, 200 hours of community service, and probation for his involvement in the robbery. He acknowledged that he, Mr. Blackwell, and Mr. Powell had talked about needing money before the defendant arrived on May 4. He said he could not see into the store from where he was standing when the robbery occurred. He acknowledged that Investigator Barr told him that he could go home if he told the police about the robbery.

Robert Blackwell testified that he was involved in the robbery of Jerry's Market but that it was the defendant's idea. He said he was talking about wanting money when the defendant approached him from behind and asked if he wanted to make some real money. He said that he told the defendant no at first but that he later agreed to participate in the robbery. He said his role was to enter the store and grab the "other lady" while the defendant stole money from the cash register. He said that he followed the defendant's advice by wrapping his shirt around his head and that the defendant used a bandana to cover his face. He said he entered the store and grabbed the woman, telling her to stay quiet. He said he saw the defendant jump over the counter and then jump back over the counter. He said he ran out of the store behind the defendant. He said the defendant gave him about $273 and told him to change clothes at his cousin's house. He said they received a ride from Jerry's Market with a woman the defendant knew. He said he was supposed to meet with the defendant later that night but was arrested by the police at his cousin's house. On cross-examination, Mr. Blackwell testified that before he met the defendant on May 4, he had talked about selling fake crack cocaine to make money. He said that he had never sold fake crack cocaine but that he had been charged with two burglaries, two to three felonies, and about four misdemeanors. He denied police told him that they would go easy on him if he testified.

Cameo Edwards testified that she met the defendant around midnight on May 4, 2002, while she and some friends were riding around Dyersburg. She said she was not driving and did not know why they picked up the defendant. She said they drove the defendant to Newbern because the defendant said he needed to pick up some money. She said she heard several people tell the defendant that "they're looking for you." She said that the defendant went to several different houses but that she did not know if he received any money. She said that they went to the Comfort Inn in Dyersburg and that on the way to the motel, the defendant told her that he and some other boys had robbed a store. She said she did not believe the defendant at that time. She said that he told her the others were scared but that he jumped the counter and told the woman that he would not hurt her if she gave him the money. She said the defendant also told her that he did not have a weapon and that he wore a scarf during the robbery. She said she went with the defendant to the motel in order to smoke marijuana. She said that the defendant gave her forty dollars to sit with him at the motel and that about an hour later, the police arrived. She said that when the police knocked on the door, the defendant went into the bathroom several times and flushed something. On cross-examination, Ms. Edwards testified that on May 4, she had been to a club before she met the defendant but that she had not smoked marijuana at the club. She said she was arrested for violating her parole when the police arrived at the motel.

Dewana Jones testified that the defendant was her friend and that she saw him while she was driving around Dyersburg with some friends on the evening of May 4, 2002. She said that she let the defendant inside the car and that he wanted to go to Newbern to get money. She said that when they reached Newbern, the defendant asked a man if the police were looking for him, to which the man responded that they were. She said that they stopped at several houses and that at one house, a woman gave the defendant money. She said the defendant told her that he and some friends had robbed a store and that he was the only one who had escaped the police. She said the defendant told her he jumped the counter at the store and told the woman at the store that he would break her in half if she called the police or screamed. She said they went to the Comfort Inn to party. She said the defendant offered her $300 dollars if she would tell the police that she had been with the defendant the entire day. She said that she agreed but that she never saw the $300. She said that after they had been in the motel for forty-five minutes to an hour, the police arrived. She said the defendant went into the bathroom and after several minutes, opened the door for the police. On cross-examination, she acknowledged smoking marijuana that night.

Deputy Lynn Waller testified that he investigated the robbery of Jerry's Market for the Newbern Police Department and that he had known the defendant for about two years. He said that when he watched the store's videotape of the robbery, he believed that the person robbing the store was the defendant. He said that when he met with the defendant at the police station, the defendant said he was not involved in the robbery. He said, however, that when he responded that he had viewed the videotape of the robbery, the defendant told him that if he would keep it to himself, the defendant would give him the names of several drug dealers in the neighborhood.

The defendant testified that he had been convicted of aggravated assault in 1993. He said he was not involved in the robbery of Jerry's Market. On cross-examination, the defendant

acknowledged having been convicted of two aggravated assaults, reckless endangerment, and possession of a weapon with the intent to employ it in the commission of or the escape from an offense. He acknowledged washing cars at Jerry's Market before the robbery and going to the motel with Ms. Edwards and Ms. Jones on May 4, 2002. He said, however, that Ms. Jones, Ms. Edwards, Mr. Blackwell, Mr. Williams, and Mr. Powell lied about his involvement in the robbery.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for robbery. The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a).

We believe that the evidence is sufficient to support the defendant's conviction for robbery. Officer Barr testified that the defendant told him "no face, no case[,]" even though Officer Barr had not told the defendant that the robbers covered their faces during the robbery. Ms. Pirtle testified that she lived just three streets away from Jerry's Market and gave a ride to the defendant on the night of the robbery. Ms. Combs testified that a man whose voice sounded like the defendant's robbed her while she was working at Jerry's Market and that the gray T-shirt confiscated by Officer Barr looked like the shirt that the robber had worn. Ms. Dodd testified that $710 and a box of cigars were taken during the robbery. Mr. Powell, Mr. Williams, and Mr. Blackwell each testified that the defendant was involved in the robbery. Mr. Blackwell said that he saw the defendant near the cash register and that the defendant gave him about $273 after the robbery. Ms. Edwards and Ms. Jones testified that the defendant told them that he had robbed a store and that he had jumped over a counter during the robbery. Ms. Jones said the defendant offered her $300 to tell the police that she had been with him the entire day. We believe that this evidence is more than sufficient to show that the defendant robbed Jerry's Market on May 4, 2002.

## II. SENTENCING

The defendant contends that the trial court erred by sentencing him to six years in the Department of Correction. However, as the state points out, the defendant has failed to include the sentencing hearing transcript in the record on appeal. A trial court's sentencing determinations are entitled to a presumption of correctness upon review. <u>See</u> T.C.A. § 40-35-401(d). The duty is now

upon the defendant to show what was incorrect about the sentencing process.  In the absence of the sentencing hearing transcript, which is essential for our review, we are to presume that the trial court's rulings are correct, and we are precluded from considering any sentencing issue in this case. See State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997).

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE